**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| AMANDA BARNHILL, *et al.*, | * |
| Plaintiffs, | * |
| v. | *     Case No.: PWG 19-2299 |
| A&M HOMEBUYERS, INC., *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs, Amanda Barnhill and her father, William Barnhill, by counsel, filed this lawsuit against Defendants, A&M Homebuyers, Inc. and Mark Collins, on July 16, 2019, in the Circuit Court of Prince George's County, Maryland. Compl., ECF No. 1-2. Plaintiffs allege breach of contract, intentional and negligent misrepresentation and concealment, and violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law Art., §§ 13-301 *et seq.*, in connection with their purchase from Defendants of the property located at 13100 Rhame Drive, Ft. Washington, Maryland (the "Property"). Defendants removed the case to this Court on August 9, 2019 pursuant to 28 U.S.C. § 1332(a).[1] Not. Removal, ECF No. 1. Pending before me are Plaintiffs' Motion for Summary Judgment on Counts I and IV and Motion to Partially Strike Expert Designation, ECF No. 19, and Defendants' Cross-Motion for Summary Judgment and Motion to Strike the Testimony of Plaintiff's [sic] Expert Anthony Rankine, ECF No. 20. I have

---

[1]     Defendants assert diversity of citizenship because the Barnhills are citizens of Maryland, and Defendants are citizens of Virginia. Not. Removal ¶¶ 2, 4-6, ECF No. 1. The amount in controversy exceeds $75,000. *Id.* ¶ 7.

reviewed all the filings[2] and find a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons stated below, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED IN PART and DENIED IN PART.  Defendants shall be granted summary judgment on all causes of action, but the motion to strike expert testimony is denied as moot.

## BACKGROUND

Defendant, Mark Collins, is the owner and president of Defendant A&M Homebuyers, Inc. ("A&M"). Collins Dep. 10:14-19, Pls.' Ex. 3, ECF No. 19-5. A&M purchases residential properties to renovate for resale. *Id.* at 12:8-19.  The renovations are performed by subcontractors. *Id.* at 20:14-21:2; 32:1:3. In the spring of 2017, A&M purchased the Property located at 13100 Rhame Drive, Ft. Washington, Maryland after being contacted by a real estate agent, Juan Carlos Ona, who provided an estimate of $54,525 for upgrading the Property.  *Id.* at 29:14-30:22; 37:19-38:2; Estimate, Pls.' Ex. 7, ECF No. 19-9. The estimate had been prepared by a contractor, H&M Servat Construction LLC ("H&M") for Mr. Ona, and A&M hired H&M as the general contractor to upgrade the Property prior to selling it.  Collins Dep. 39:13-15; Estimate; Contractor Agmt., Defs.' Ex. 8 at 5-6, ECF No. 20-10.  Mr. Ona oversaw the construction, which went overbudget. Collins Dep. 29:18-30:6; 65:17-663; 69:21-70:12. The Property was then offered for sale, and the Barnhills made an offer through their real estate agent in October 2017.  Residential Contract, ECF No. 1-3.

The Barnhills' realtor arranged for the Property to be formally inspected on November 3, 2017. Property Inspection Report, Defs.' Ex. 4, ECF No. 20-6; A. Barnhill Dep. 60:1-61:4, Defs.' Ex. 2, ECF No. 20-4. After Ms. Barnhill reviewed the report, an inspection addendum was added

---

[2]  Pls.' Mot., ECF No. 19; Defs.' Resp. & Cross-Mot., ECF No. 20; Pls.' Resp. & Reply, ECF No. 21, Defs.' Reply, ECF No. 22, and all the attached exhibits.

2

to the contract. A. Barnhill Dep. 63:2-6; 64:12-18; Property Inspection Notice, Defs.' Ex. 5, ECF No. 20-7. The Barnhills provided a list of unsatisfactory conditions that had been identified in the inspection, and A&M agreed to take corrective actions. Property Inspection Notice §§ 2-3. The agreed upon repairs were completed to Ms. Barnhill's satisfaction prior to final settlement on November 2, 2017. A. Barnhill Dep. 73:7-74:7; 76:14-18. Other than the agreed repairs, the Property was sold in "as is" condition. Residential Contract 5, 26-31; Property Disclosure Statement, Defs.' Ex. 6, ECF No. 20-8.

A couple of months after the purchase of the Property was complete, Ms. Barnhill noted an electrical malfunction causing her bedroom light to flicker when the bathroom fan was turned on. A. Barnhill Dep. 39:5-46:8. The problem was repaired by the Barnhills' home warranty firm, and no further electrical issues have been identified or repaired. *Id.* Additionally, Ms. Barnhill testified that a pipe burst in the basement, which caused damage to the walls and carpet. *Id.* at 46:13-22. The repairs were performed by Ms. Barnhill's contractor, and there have been no other plumbing issues identified. *Id.* at 47:8-50-9. However, Plaintiffs allege that Defendants were aware of latent defects, specifically, a lack of permitting during the renovation project and electrical and plumbing deficiencies, which were concealed from Plaintiffs and represent a material characteristic of the Property they purchased. Compl. ¶¶ 27-30.[3] The Barnhills assert that the unpermitted construction poses a direct threat to their health and safety and will cause them to incur at least $200,000 to repair or replace the non-code compliant conditions. *Id.* ¶¶ 32-35.[4]

Plaintiffs filed this lawsuit asserting the following causes of action:

---

[3] Ms. Barnhill testified that the basis of Plaintiffs' claim is that there were no permits, and the electrical and plumbing work was done incorrectly. A. Barnhill Dep. 32:21-33:18. She explained that her understanding of the defects are from her contractor. *Id.* at 37:19-21.

[4] An estimate was provided by Ms. Barnhill's contractor for $165,000 to complete an entire renovation. Pls.' Estimate Repairs, ECF No. 19-12.

3

- Count I – Breach of Contract
- Count II – Intentional Misrepresentation / Concealment
- Count III – Negligent Misrepresentation / Concealment
- Count IV – Violation of the Maryland Consumer Protection Act ("MCPA")

The parties have filed cross-motions for summary judgment. Plaintiffs acknowledge that the full amount of damages is in dispute but contend that the fact they incurred some degree of damage due to the lack of permitting and associated inspections is not in dispute. Pls.' Mot. Mem. 2, ECF No. 19-1. Plaintiffs assert that they are entitled to summary judgment for at least the undisputed damages of $14,065.25—the amount that Defendants' expert opined was required to bring the Property into compliance—plus reasonable attorneys' fees, and request that the disputed damages be presented at trial. *Id.* at 3. Plaintiffs also seek summary judgment in their favor on the MCPA and breach of contract claim. *Id.* at 7, 10. Defendants respond that performance of work with or without permits does not constitute a "latent defect" for purposes of Maryland Residential Disclosure law, and summary judgment in Defendants' favor is warranted. Defs.' Mot. Mem. 23. Further, both parties seek to strike testimony of the opposing parties' expert witness.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of

4

the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version.").  It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists.  *Anderson*, 477 U.S. at 256.  A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor."  *Id.*

"On cross motions for summary judgment, 'each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant.'" *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)).  "Cross motions for summary judgment 'do not automatically empower the court to dispense with the determination whether questions of material fact exist.'" *Equal Rights Ctr. v. Archstone Smith Tr.*, 603 F. Supp. 2d 814, 821 (D. Md. 2009) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)).  Rather, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).

## ANALYSIS

**I.      Breach of Contract Claim**

For plaintiffs to prevail in an action for breach of contract, they must prove: (1) a contractual obligation and (2) a breach of that obligation. *See Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at *10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). The parties do not dispute that Defendants owed Plaintiffs a contractual obligation to deliver the Property free of any latent defects known by Defendants. Plaintiffs contend that Defendants breached that obligation by failing to disclose their "actual knowledge of the existence of the latent defect of the lack of permits at the Property." Pls.' Mot. Mem. 10.  But Defendants contend that "the performance of work at the property without a permit does not constitute a latent defect," and regardless, the Plaintiffs were "specifically alerted to this fact through their inspection." Defs.' Mot. Mem. 23.  Defendants also argue that Plaintiffs cannot put forth any admissible evidence that Defendants had actual knowledge of any defects. *Id.*

Under Maryland law, the seller of a single-family residential property must provide the buyer with a completed State Real Estate Commission Disclosure and Disclaimer Statement, in which the seller must either disclose all known defects in the physical condition of the property or disclaim any representations or warranties of the condition of the property. *See* Maryland Code Ann., Real Prop., §§ 10-702(c)–(f). Whether the seller chooses to disclose or make an "as is" disclaimer using a standard form, the seller remains obligated to disclose all "latent defects" of which the seller actually knows at the time of signing the statement. *See* Real Prop. §§ 10-702(d)(1) and 10-702(e)(2).  There is no requirement for a seller to undertake an investigation or inspection of the property to determine whether there are any defects.  Real Prop. §§ 10-702(d)(2)(i)–(ii) and

10-702(e)(4). Further, the seller's disclosure "is not a substitute for an inspection by an independent home inspection company." Real Prop. § 10-702(e)(3)(ii).

A "latent defect" is defined in the statute as

> material defects in real property or an improvement to real property that:
>
> (1) A purchaser would not reasonably be expected to ascertain or observe by a careful visual inspection of the real property; and
>
> (2) Would pose a direct threat to the health or safety of:
>
> > (i) The purchaser; or
> >
> > (ii) An occupant of the real property, including a tenant or invitee of the purchaser.

Real Prop. § 10-702(a).

Plaintiffs argue that un-permitted renovation work is not something they could "observe by a careful visual inspection," and is also a safety issue, which makes the lack of permits a latent defect. Pls.' Mot. Mem. 10-11. Defendants argue that the lack of a permit during construction does not constitute a material defect in real property nor does it pose a "direct threat to the health or safety" of plaintiffs, and they note there is no Maryland case law that addresses whether the failure to obtain construction permits constitutes a latent defect. Defs.' Mot. Mem. 16. While I note that the Maryland Residential Property Disclosure Statement includes a question specifically asking if permits were pulled,[5] which weighs heavily towards a finding that failure to obtain them is material, it is not necessary for me to resolve this dispute because Plaintiffs fail to provide evidence of Defendants' actual knowledge regarding the lack of permits.

---

[5] "If you or a contractor have made improvements to the property, were the required permits pulled from the county or local permitting office?" Maryland Residential Property Disclosure Statement 16A, Residential Contract 26.

Plaintiffs assert that it is "an undisputed fact that A&M had notice that the work it directed to be carried out at the Property was unpermitted and illegal," referring to an email from the contractor that stated no permits had been pulled. Pls.' Reply 9, ECF No. 21. The referenced email, dated May 11, 2017, was from H&M to Mr. Ona, and forwarded to Mr. Collins. Email, ECF No. 19-10. It includes a three-line payment schedule followed by: "NO PERMITS, IF NEEDED WILL PULL AT OWNER COST." *Id.* Mr. Collins testified that he doesn't recall receiving the email. Collins Dep. 63:3-7. He also testified that he thought permits would be pulled for the work, although no one at A&M ever checked to make sure. *Id.* at 65:1-9; 63:15-22. The email can be interpreted as stating that needed permits would be obtained if needed. More importantly, Mr. Collins subsequently signed a contract with H&M on May 18, 2017 (one week *after* the email referenced above), containing a permits and inspections clause:

> Contractor shall be responsible for obtaining all permits necessary for the design construction of the project, and shall further be responsible for arranging for all required inspections in connection with the design and construction of the project. No work shall be commenced or undertaken until the required permits have been obtained.

Contractor Agmt. ¶ 4. Mr. Collins testified that it is A&M's business practice to rely on contractors to pull permits. Collins Dep. 32:13-17; 37:6-13. There is no evidence that Mr. Collins or anyone at A&M knew that no permits were obtained, particularly after he entered into a renovation contract with H&M that explicitly required the contractor to arrange for all required permits, and Defendants had no affirmative obligation to disregard the language of the renovation contract and investigate or inspect regarding the permitting. Without evidence to show that Defendants had actual knowledge of the lack of permits, Plaintiffs' assertions to the contrary are insufficient to create a genuine dispute of material fact, and Plaintiffs are unable to prevail on their claim that Defendants breached their obligation to disclose all latent defects.

8

Accordingly, I shall deny Plaintiffs' motion for summary judgment on the breach of contract claim and grant Defendants' cross-motion.

## II. Intentional & Negligent Misrepresentation Claims

Plaintiffs' claims of intentional and negligent misrepresentation (Counts 2 and 3) have similar elements. *See Saxon's Inc. v. MacKenzie Retail, LLC*, No. 3322, Sept. Term, 2018, 2020 WL 4384239, at *4 (Md. Ct. Spec. App. 2020) (citing the elements for negligent misrepresentation, fraud, and intentional misrepresentation); *see also Estate of Adams v. Continental Ins. Co.*, 161 A.3d 70, 84 (Md. Ct. Spec. App. 2017) (noting the similarities between negligent and fraudulent misrepresentation). Specifically, intentional misrepresentation requires the following elements to be proven:

> (1) that a representation made by a party was false;
>
> (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him;
>
> (3) that the misrepresentation was made for the purpose of defrauding some other person;
>
> (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and
>
> (5) that that person suffered damage directly resulting from the misrepresentation.

*Saxon's*, 2020 WL 4384239, at * 5-6 (quoting *Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 984 A.2d 361, 386 (Md. Ct. Spec. App. 2009).) Negligent misrepresentation requires the following elements to be proven:

> (1) The defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

9

>    (2) The defendant intends that his statement will be acted upon by the plaintiff;
>
>    (3) The defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
>
>    (4) The plaintiff, justifiably, takes action in reliance on the statement; and
>
>    (5) The plaintiff suffers damage proximately caused by the defendant's negligence.

*Id.* at *5 (quoting *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1046 (Md. Ct. Spec. App. 2016), aff'd, 155 A.3d 445 (Md. 2017)).

Defendants seek summary judgment on both misrepresentation claims. Defs.' Mot. Mem. 23-25. They argue that there is no evidence of a misrepresentation to Plaintiffs, no evidence of an intent to defraud, and no evidence that Plaintiffs relied on any misrepresentation. *Id.* at 24. Plaintiffs assert that "A&M misrepresented the existence of its lack of knowledge of latent defects at the Property—specifically, the lack of permitting for the construction work carried out." Pls.' Reply 10-11. Plaintiffs argue that there are sufficient facts to show that Defendants were motivated to conceal the lack of permits because they were over-budget and behind schedule on the renovation project, which implicates Defendants' intentions and creates a question for the factfinder to determine. *Id.* at 11. Ms. Barnhill also testified that she relied on a Zillow listing that said the Property had been renovated, and "[n]o one ever suggested to Ms. Barnhill that the construction work that the seller undertook was unpermitted and illegal." *Id.* With regards to negligent misrepresentation, Plaintiffs argue that even if they are unable to prove actual knowledge of the lack of permits, there is ample evidence to conclude that A&M's alleged statement was negligent. *Id.* at 12.

As discussed above, Plaintiffs have not provided sufficient evidence to create a genuine dispute of material fact regarding Defendants' actual knowledge of latent defects. More tellingly, however, even if Plaintiffs raise a question of fact regarding Defendants' negligence or reckless indifference to the status of permitting, Plaintiffs fail to establish that they relied on Defendants' alleged representation that the renovation work was permitted. To establish the reliance element of their claims, Plaintiffs must prove that "they not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have executed the contract had it not been made." *200 North Gilmor, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480, 490 (D. Md. 2012). "Ordinarily, the matter of reasonableness of reliance is an issue reserved for the finder of fact." *Id.* at 491. However, Plaintiffs must provide more than a "scintilla of evidence" to show that a genuine dispute of material fact exists sufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-52, 56. Here, Ms. Barnhill's own testimony is that no one represented that the house had been permitted, nor did she did rely on a representation that the work done on the house was permitted. A. Barnhill Dep. 34:7-35-12. Prior to finalizing the purchase, Plaintiffs arranged for an inspection of the Property, which included a notification that the Property had been renovated and recommended that Plaintiffs request documentation including permits. Property Inspection Report 2. Plaintiffs provided the Property Inspection Notice to Defendants and the agreed upon repairs were completed to Ms. Barnhill's satisfaction before they finalized the purchase of the Property. *See* Property Inspection Notice §§ 2-3; A. Barnhill Dep. 73:7-74:7; 76:14-18. Plaintiffs did not request information related to permits nor request that permitting and inspections be completed prior to purchasing the Property. Importantly, Plaintiffs fail to provide any evidence that they would not have purchased the Property had they known that the renovations had been performed without proper permitting and inspections.

Accordingly, I shall grant Defendants' motion for summary judgment on intentional and negligent representation.

### III. MCPA Claim

The purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State . . . ." Md. Code. Ann., Com. Law Art., § 13-102(b)(1). In enacting the MCPA, the General Assembly determined that the State "should take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices and to prevent these practices from occurring in Maryland." Com. Law § 13-102(b)(3). The General Assembly further instructed that the MCPA shall be "construed and applied liberally to promote its purpose." Com. Law § 13-105.

Plaintiffs assert that they are entitled to summary judgment on their MCPA claim on the theory that Defendants violated Com. Law § 13-301 subsections (1) and (2). Pls.' Mot. Mem. 9. These subsections state:

> Unfair, abusive, or deceptive trade practices include any:
>
> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
>
> (2) Representation that:
>
> (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;
>
> (ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;
>
> (iii) Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or

> (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

Defendants note that Plaintiffs also allege violations of Com. Law § 13-301 (9), which states:

> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:
>
> (i) The promotion or sale of any consumer goods, consumer realty, or consumer service;
>
> (ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
>
> (iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental;

Defs.' Mot. Mem. 20 n.4 (citing Complaint ¶ 79). Under the MCPA, "consumer realty" is defined as real property that is "primarily for personal, household, family or agricultural purposes." Com. Law § 13-101(d)(1). "Consumer" is defined as an "actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." Com. Law § 13-101(c)(1).

In addition to the ability for a consumer to pursue a public remedy, the MCPA provides for a private action for damages, but only if an "actual injury or loss" can be proven. *Lloyd v. Gen Motors Corp.*, 916 A.2d 257, 277 (Md. 2007) (citing Com. Law § 13-408). "[I]n order to articulate a cognizable injury under the [MCPA], the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Id.* (citing *Golt v. Phillips*, 517 A.2d 328, 333-35 (Md. 1986); *Citaramanis v. Hallowell*, 613 A.2d 964, 968-70 (Md. 1992);

*Morris v. Osmose*, 667 A.2d at 635 n. 10 (Md. 1995); *McGraw v. Loyola Ford*, 723 A.2d 502, 512 (Md. Ct. Spec. App. 1999), *cert. denied* 727 A.2d 382 (1999)).

In sum, "[t]o prevail on [their] MCPA claim, [plaintiffs] must prove (1) an unfair or deceptive practice or misrepresentation that (2) was relied upon, and (3) caused [them] actual injury." *Brooks v. Mortgage Investors Corp.*, No. WDQ–13–1566, 2015 WL 926123, at *3 (D. Md. Mar.3, 2015) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd*, 916 A.2d at 277; Com. Law § 13–408 (providing for a private cause of action)). Defendants argue that Plaintiffs have failed to show reliance. As discussed above, Plaintiffs have failed to identify any evidence that they relied on Defendants' allegedly misleading statements regarding permitting when they purchased the Property. As such, Defendants are entitled to summary judgment on Plaintiffs' MCPA claim, and Plaintiffs' motion for summary judgment on the MCPA claim shall be denied.

**IV.  Motions to Strike**

Both parties have moved to strike expert opinion testimony. Because I have determined that Defendants' motion for summary judgment will be granted on all Plaintiffs' claims, the discussion of expert testimony related to damages is moot and shall be denied as such.

## CONCLUSION

For the foregoing reasons,

1. Plaintiffs' Motion for Summary Judgment on Counts I and IV and Motion to Partially Strike Expert Designation, ECF No. 19, is DENIED;

    a. Plaintiffs' Motion for Summary Judgment on Counts I and IV is DENIED;

    b. Plaintiffs' Motion to Partially Strike Expert Designation is DENIED AS MOOT;

2. Defendants' Cross-Motion for Summary Judgment and Motion to Strike the Testimony of Plaintiff's [sic] Expert Anthony Rankine, ECF No. 20, is GRANTED IN PART and DENIED IN PART;

   a. Defendants' Cross-Motion for Summary Judgment on all Plaintiffs' causes of action is GRANTED;

   b. Defendants' Motion to Strike the Testimony of Plaintiff's [sic] Expert Anthony Rankine is DENIED AS MOOT;

3. Judgment shall be entered by separate Order.

Date:   August 22, 2022                                             /S/
                                                        Paul W. Grimm
                                                        United States District Judge